IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| DONALD JOSEPH LAMOUREAUX, | ) | Civil No.: 3:10-cv-06295-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Alan Stuart Graf
      Alan Stuart Graf P.C.
      316 Second Rd
      Summertown, TN 38483
      (931) 964-3123

            Attorney for Plaintiff

      Dwight C. Holton, U.S. Attorney
      Adrian L. Brown, Asst. U.S. Attorney
      1000 S.W. 3rd Avenue, Suite 600
      Portland, OR 97204

Summer Stinson
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 221 A
Seattle, WA 98104-7075

      Attorneys for Defendants

JELDERKS, Magistrate Judge:

      Plaintiff Donald Lamoureux brings this action against the Commissioner of Social Security (the Commissioner) pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision denying his application for Social Security Disability Benefits (DIB). Plaintiff seeks an Order remanding the action to the Social Security Administration (the Agency) for an award of benefits. In the alternative, Plaintiff asks that the action be remanded for further proceedings.

      For the reasons set out below, the decision of the Commissioner should be reversed and the action should be remanded to the Agency for an award of benefits.

## **Procedural Background**

      Plaintiff filed an application for DIB on December 12, 2006, alleging that he had been disabled since December 28, 2003. After his application had been denied initially and upon review, Plaintiff timely requested a hearing before an Administrative Law Judge (ALJ).

      On August 20, 2009, a hearing was held before ALJ John Madden, Jr. in Eugene, Oregon. In a decision filed on September 29, 2009, ALJ Madden, Jr. found that Plaintiff was not disabled within the meaning of the Social Security Act (the Act). That decision became the final decision of the Commissioner on July 28, 2010, when the Appeals Council denied Plaintiff's request for review. In the present action, Plaintiff seeks review of the Commissioner's decision.

FINDINGS AND RECOMMENDATION – 2

**Factual Background**

Plaintiff was born on December 12, 1955, and was 47 years old at the time of the alleged onset of his disability.  He obtained a GED, and has past relevant work experience as a material lister.  Plaintiff has not worked since 2003.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or

equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

## **Medical Record**

The parties have addressed the relevant portions of the record only in their discussion of the issues Plaintiff has raised, and have not summarized the entire medical record.  I will do likewise, and here simply note that medical records indicate that Plaintiff has a number of

medical issues.  These records show that, at the time relevant to this action, Plaintiff was 5'7"

tall, weighed 370 pounds and had a body mass index of 55, had undergone several back and knee

surgeries, had severe osteoarthritis in his left knee and a tear in the meniscus of his right knee,

and had been treated for chronic pain with lidocaine injections, methadone, neurontin, naprosyn,

trazadone, epidural injections, an implanted stimulator, and a morphine pump.  The record also

indicates that he is diabetic and suffers from dyslipidemia, chronic obstructive pulmonary

disease, diastolic heart failure, esophageal reflux disease, hypogonadism, and sleep apnea, and

has been diagnosed with severe mental disorders.  Plaintiff lost the tips of two fingers on his left

hand in a woodworking accident in April, 2006.


### ALJ's Decision

At the first step of his analysis, the ALJ found that Plaintiff had not engaged in

substantial gainful activity since the alleged onset of his disability on December 28, 2003.

At the second step, the ALJ found that Plaintiff's degenerative disk disease of the lumbar

spine, left knee valgus arthritis, and obesity were severe impairments.

At the third step of his analysis, the ALJ found that Plaintiff did not have an impairment

or combination of impairments that met or equaled a presumptively disabling impairment set out

in the "listings," 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d),

404.1525, 404.1526).

The ALJ next assessed Plaintiff's residual functional capacity (RFC).  He concluded that

Plaintiff retained the functional capacity required

> to perform the full range of sedentary work as defined in 20 C.F.R. 404.1567(a).
> The claimant could lift and/or carry no more than 10 pounds at a time.  The
> claimant could sit for approximately six hours out of an eight hour workday.  The

claimant could stand and/or walk no more than two hours out of an eight hour workday.

In evaluating Plaintiff's RFC, the ALJ found that Plaintiff's description of the severity of his symptoms and limitations was not entirely credible.  In support of that conclusion, he asserted that Plaintiff had stopped work for reasons other than his impairments, was motivated in part by "secondary gain," failed to seek or follow through on treatment, had received conservative treatment that controlled his symptoms, performed a full range of daily activities that was inconsistent with his allegations, and alleged symptoms and limitations which were inconsistent with the medical evidence.

Based upon the hearing testimony of a Vocational Expert (VE), at step 4 of his disability analysis, the ALJ concluded that Plaintiff could perform his past relevant work as a material lister, as that work was generally and actually performed.  Accordingly, he concluded that Plaintiff was not disabled within the meaning of the Act.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in finding that his mental impairments were not severe, failed to adequately support his rejection of the opinions of a treating physician, failed to provide sufficient reasons for concluding that he was not wholly credible, failed to properly support his rejection of lay witness testimony, improperly characterized his past relevant work as a material lister as sedentary, and erred in concluding that he was not disabled because he could perform the "least demanding characteristics" of that position.

## 1. Determination that Plaintiff's mental impairments were "non-severe" and evaluation of combined effects of mental and physical impairments

Plaintiff contends that the ALJ erred in concluding that his mental impairments were non-severe and failed to properly consider the combined effects of his mental and physical impairments.  This argument is largely based on his assertion that the ALJ failed to provide

adequate reasons for rejecting the opinion of Scott Pengelly, Ph.D., a clinical psychologist who administered psychological testing and evaluated Plaintiff in a report dated December 11, 2006.

Based upon his testing and examination, Dr. Pengelly diagnosed Plaintiff with Major Depressive Disorder, Recurrent; Depressive Personality Disorder, and Dependent Personality Disorder, with Negativistic (Passive-Aggressive) Personality Traits; and Avoidant Personality Features. He assessed Plaintiff with a Global Assessment of Functioning (GAF) score of 45, a level that indicates "serious symptoms . . . or . . . serious impairment in social, occupational, or school functioning . . . ." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR), 4th ed. text revision, (2000) at 34.

Plaintiff scored in the "moderate" range on the Beck Depression Test, scored in the "mild" range on the Beck Anxiety Inventory, and scored in the "severe" range on the Beck Hopelessness Scale. Dr. Pengelly summarized these scores as follows:

> This patient's response style may indicate a tendency to magnify illness, an inclination to complain, or feelings of extreme vulnerability associated with a current episode of acute turmoil. The patient's scale scores may be somewhat exaggerated. On the basis of the test data, it may be assumed that the patient is experiencing a severe mental disorder. Accommodating, yet dejected and often forlorn, this patient may be disposed to complaints of weakness and fatigue. Reluctant to make a fuss, he may also be hesitant to seek assistance in overcoming his feelings of inadequacy and sadness. Although compliant, he may not be disposed to assume competent attitude and behavior . . . Axis 1 clinical syndromes are suggested by the client's profile in the areas of Major Depression (recurrent, severe, without psychotic features). He appears to fit the following Axis II classifications best: Depressive Personality Disorder, and Dependant Personality Disorder, with Negativistic (Passive-Aggressive) Personality Traits, and Avoidant Personality Features.

Dr. Pengelly also administered the Milton Clinical Multiaxial Inventory-III test. Based upon Plaintiff's scores on this test, he opined that

> this patient is experiencing substantially more depressive symptoms than the typical medical patient. Combined with his personality traits, this points to a poor prognosis in the face of a major chronic illness . . . . This patient is quick to vent

his emotions, both positive and negative.  He may lose emotional stability at times, expressing self-derogating moodiness, preoccupation with his health, and a tendency to overreact to physical symptoms.  Demanding of healthcare personnel, he may have little trust in their abilities . . . . There is a high probability that the outcome of a traditional medical program to address this patient's pain will be poor.    In  addition  to  conservative  pharmacologic  treatment,  psychological counseling  or  stress  management  may  help  to  diminish  his  pain.    He  may complain of a complete inability to carry on daily activities and responsibilities as a result of his illness.

Dr. Pengelly administered an MMPI-2 test.  He concluded that the resulting profile was

valid, and noted that

Individuals who obtain similar profiles are often seen as significantly depressed, worried and pessimistic.  Feelings of inadequacy and self-deprecation are likely present.  These people internalize stress and usually withdraw when put under pressure.  An acute reactive depression is suggested.

The ALJ asserted that Dr. Pengelly had found that Plaintiff's depression was "only

moderate," and cited Dr. Pengelly's assessment in support of his conclusion that Plaintiff's

depression was not a "severe" impairment.  He gave "great weight" to the portions of Dr.

Pengelly's evaluation in which he indicated that Plaintiff's depression was moderate, and in

which he noted the "the testing suggested possible exaggeration and overuse of medical care."

The ALJ gave little weight to Dr. Pengelly's conclusion that Plaintiff had a severe mental

disorder because he found it inconsistent with the diagnosis of moderate depression, because

Plaintiff did not receive medication or treatment for mental health symptoms, and because he

concluded that Plaintiff was not wholly credible.

Plaintiff's contentions that the ALJ erred in his assessment of Dr. Pengelly's opinion,

and erred in concluding that Plaintiff's mental impairments were not severe, are well taken.  As

discussed below, the ALJ did not provide sufficient support for this conclusion that Plaintiff was

not entirely credible.  Dr. Pengelly's diagnosis of moderate depression is consistent with his

conclusion that the combination of depression and other mental disorders resulted in mental disorders that were "severe."  In noting that Plaintiff might magnify symptoms and that his scores might be "somewhat exaggerated," Dr. Pengelly did not suggest that Plaintiff's mental disorders were not severe, but instead described behaviors that might result from those severe impairments.  In addition, contrary to the ALJ's assertions, medications were considered and prescribed for Plaintiff's mental disorders.  On November 28, 2007, Dr. Mircea Rachita, Plaintiff's treating physician, noted that Plaintiff suffered from moderate depression and opined that he might benefit from Cymbalta.  On July 5, 2008, he discussed depression with Plaintiff, and prescribed Wellbutrin.

The "severity" analysis at step two of the disability determination process "is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987); SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).  An ALJ can find that an impairment is 'not severe' only if the evidence establishes that it has "no more than a minimal effect on an individual's ability to work."  Id.

Based upon extensive objective testing that produced results that he found were valid, Dr. Pengelly concluded that Plaintiff's mental disorders were severe.  The ALJ rejected that conclusion in favor of the opinion of Bill Hennings, Ph.D., a non-examining doctor who opined that Plaintiff's mental impairments were not severe.

The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician.  Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ must provide clear and convincing reasons for rejecting the uncontradicted opinions of an examining physician, id., and must support the rejection of an examining physician's opinion that is

contradicted by another physician with specific and legitimate reasons that are supported by substantial evidence in the record.  Andres v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995).

The ALJ erred in rejecting Dr. Pengelly's opinion that Plaintiff's mental disorders were severe.  I have found no other opinions of treating or examining physicians that contradict Dr. Pengelly's conclusion that Plaintiff suffered from severe mental disorders.  Even if such a contradiction existed, a non-examining physician's opinion does not constitute "substantial evidence" that supports rejection of an examining physician's opinion.  See, e.g., Lester v. Chater, 81 F.3d 821, 830 (1995).

The ALJ did not provide a sufficient basis for rejecting Dr. Pengelly's opinion that Plaintiff had severe mental disorders, and those disorders would reasonably be expected to have more than a "minimal effect" on Plaintiff's ability to work.  The ALJ therefore erred in concluding that Plaintiff's mental impairments were not severe, and in failing to consider the combined effects of Plaintiff's severe mental and physical impairments.


2. **ALJ's Assessment of Dr. Rachita's Opinions**

In a letter dated October 10, 2008, Dr. Mircea Rachita, Plaintiff's treating physician, summarized Plaintiff's medical condition.  Dr. Rachita opined that, because of a number of "severe and chronic problems," Plaintiff was unable to "maintain gainful employment . . . ."  Dr. Rachita reported that Plaintiff had suffered from severe sleep apnea that was not "perfectly controlled using a CPAP machine," and that he had "associated severe restless leg syndrome requiring treatment with antiparkinsonian agents."  He referred to Plaintiff's laminectomy, and noted that the pain specialist who had treated him had "placed a nerve stimulator in his back in 2007."  Dr. Rachita noted that Plaintiff had severe osteoarthritis in his knees, had undergone

multiple knee surgeries, and could not have the knee replacement surgery he needed because of

his obesity.  He added that Plaintiff had osteoarthritis in his right shoulder, and that three

surgeries had been performed on that shoulder.  Dr. Rachita noted that Plaintiff weighed 370

pounds and had a body mass index of 55, and described Plaintiff as very severely obese.  He

added that Plaintiff 's "multiple other chronic conditions," including dyslipidemia, CPOD,

diastolic heart failure, esophageal reflux, major depression, and hypogonadism, "all interfere

with his well being."

> The ALJ addressed Dr. Rachita's opinion as follows:
>
> Although this opinion has been submitted almost a year after the date last insured,
> December 31, 2007, I considered it since Dr. Rachita is a treating physician.
> However, I give it little weight.  The opinion is generally unsupported by relevant
> evidence in the record prior to the date last insured.  I further note that most of the
> impairments are considered nonsevere, as discussed earlier.  I also comment that
> the claimant's obesity symptoms, which serves as a catalyst for his back and knee
> problems, has been addressed by several providers and diet/exercise has been
> recommended; Dr. Rachita specifically stated that weight loss would help
> alleviate many of his back/knee symptoms.  Nonetheless, I acknowledge that the
> claimant has limitations relating to his severe impairments and thus have limited
> him to sedentary work.

Because treating physicians have a greater opportunity to know and observe their

patients, their opinions are entitled to greater weight than the opinions of other physicians.

Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989).  An ALJ must support the rejection

of a treating physician's opinion with "findings setting forth specific and legitimate reasons for

doing so that are based upon substantial evidence in the record."  Magallanes v. Bowen, 881 F.2d

747, 751 (9th Cir. 1989).  An ALJ must provide clear and convincing reasons for rejecting the

opinion of a treating physician that is not contradicted by another doctor.  Lester v. Chater, 81

F.2d 821, 830-31 (9th Cir. 1995).

FINDINGS AND RECOMMENDATION – 12

Plaintiff contends that the ALJ did not adequately support his rejection of Dr. Rachita's opinion. I agree. Reports containing observations made after a claimant's date last insured are relevant in evaluating disability claims. See, e.g., Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988); Kemp v. Weinberger, 522 F.2d 967, 969 (9th Cir. 1975); SSR 83-20. Contrary to the ALJ's assertions, a careful review of the medical record confirms that the conditions and impairments that Dr. Rachita described existed well before Plaintiff's date last insured, and the medical record developed before Plaintiff's date last insured is fully consistent with Dr. Rachita's description of Plaintiff's condition and his opinion that Plaintiff's impairments were disabling.

The ALJ's observation that Plaintiff's condition would likely improve with weight loss is amply supported by the record. However, the Commissioner has cited, and I have found, no reported decisions indicating that a claimant whose obesity contributes to disability is not considered disabled if weight loss would reduce the severity of symptoms. In any event, Dr. Rachita noted that weight loss was "difficult to achieve," and the record indicates that Plaintiff did attempt to lose weight.

Because the medical record includes no opinions of treating or examining physicians contradicting Dr. Rachita's opinion as to the severity of Plaintiff's medical impairments or the likely effects of those impairments on Plaintiff's ability to "maintain gainful employment," the ALJ was required to provide clear and convincing reasons for rejecting Dr. Rachita's opinion. The reasons the ALJ provided neither satisfied that standard, nor would have met the lower standard--requiring specific and legitimate reasons, supported by substantial evidence in the record--that would have applied if Dr. Rachita's opinion had been contradicted.

Where, as here, an ALJ provides inadequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited as a matter of law.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  A reviewing court then has discretion to remand the action for further proceedings or for a finding of disability and an award of benefits.  See, e.g., Stone v. Heckler, 761 F.2d 530, 533 (9th Cir. 1985).  Whether an action is remanded for further proceedings depends on the likely utility of additional Agency consideration.  Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000).  A reviewing court should credit the evidence and remand for a finding of disability and an award of benefits if: 1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; 2) there are no outstanding issues to be resolved before a determination of disability can be made; and 3) it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited.  Smolen, 80 F.3d at 1292.

Here, the ALJ failed to provide legally sufficient reasons for rejecting the opinion of Plaintiff's treating physician, there are no outstanding issues that need to be resolved before a determination of disability can be made, and it is clear from the record that a finding of disability would be required if Dr. Rachita's opinion were credited.  Under these circumstances, this action should be reversed and remanded to the Agency for an award of benefits.

3. **ALJ's Credibility Determination**

Plaintiff contends that the ALJ failed to provide an adequate basis for rejecting his allegations concerning the severity of his symptoms and impairments.  Though my conclusion that this action should be reversed and remanded for an award of benefits on other grounds

FINDINGS AND RECOMMENDATION – 14

makes it technically unnecessary to do so, I will briefly address this issue in order to create a full record for any possible review.

a. **Applicable Standards**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's statements concerning the severity of his symptoms merely because they are unsupported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(*en banc*)). If a claimant produces medical evidence of an underlying impairment and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); SSR 96-7p. If an ALJ's credibility determination is supported by substantial evidence, it must be upheld even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to examine several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or

FINDINGS AND RECOMMENDATION – 15

other symptoms."  An ALJ may support a determination that the claimant was not entirely

credible by identifying inconsistencies or contradictions between the claimant's complaints and

his activities of daily living.  Thomas, 278 F.3d at 958-59 (9th Cir. 2002).


b. **Analysis**

  Because Plaintiff produced evidence of underlying medical conditions that would be

expected to produce some symptoms and there was no evidence of malingering, the ALJ was

required to support his determination that Plaintiff was not wholly credible with specific, clear

and convincing reasons that were supported by substantial evidence.

  As noted above, the ALJ asserted that Plaintiff was not entirely credible because there

was evidence that he had stopped work for reasons other than his impairments, was motivated in

part by "secondary gain," failed to follow through on treatment, had received conservative

treatment that controlled his symptoms, performed a full range of daily activities that was

inconsistent with his allegations, and alleged symptoms and limitations which were inconsistent

with the medical evidence.  He also found Plaintiff's testimony that his wife performed most of

the household tasks and assisted him with his personal care less than fully credible because

Plaintiff's wife "is apparently disabled and receiving disability payments."

  These reasons are not clear and convincing, and are not supported by substantial evidence

in the record.  Most significantly, the ALJ's assertion that Plaintiff "has received treatment . . .

that has been essentially routine and/or conservative in nature" is simply not supported by the

medical record.  That record shows that Plaintiff has undergone numerous surgeries for his

significant back, shoulder, and knee problems, and that in addition to methadone, neurontin,

naprosyn, ultram, and trazadone, Plaintiff's chronic pain has been treated with a morphine pump,

an implanted stimulator, and spinal injections.  These cannot be fairly characterized as the kind of routine or conservative treatments that might indicate that a claimant's description of his pain and impairments is overstated.

The ALJ's assertion that Plaintiff could perform "most of his activities of daily living" with only occasional assistance from his wife, and that his activities reflected "fairly normal functioning" is not supported by the record.  The activities the ALJ cited included preparing breakfast, watching television, lying down, helping to care for two dogs, walking up to 20 yards, building wooden cars in a workshop, and attending medical appointments and examinations "without assistance."  These activities, as described by both Plaintiff and Plaintiff's wife, cannot be fairly characterized as "fairly normal functioning."  The disability of Plaintiff's wife does not support the conclusion that Plaintiff's description of his impairments was not credible.  The record does not indicate the nature of Plaintiff's wife's disability, or in any way demonstrate that Plaintiff's testimony about his activities was inaccurate because his wife's disability would not have allowed her to care for Plaintiff as he alleged.  Moreover, Plaintiff's ability to attend medical appointments "without assistance" is not inconsistent with Plaintiff's testimony about the severity of his impairments, and is not inconsistent with the conclusion that those impairments are disabling.

The medical records do indicate that Plaintiff occasionally missed medical appointments and was "discontinued" from physical therapy at one point because of attendance problems.  However, the voluminous medical record includes few notations of missed appointments, and there is no indication that Plaintiff failed to credibly describe his symptoms or that he missed physical therapy sessions because he had concluded that he did not need treatment for his pain and impairments.  Records related to the decision to try spinal narcotic treatments indicate that

several courses of physical therapy had not been "significantly helpful," and Plaintiff may have simply concluded that physical therapy was not useful.

The ALJ cited a note in a medical record indicating that Plaintiff was "very upset" when his applications for benefits was "turned down for the fourth time" as evidence that "[s]econdary gain issues may . . . be present." However, there is no basis for concluding that the level of disappointment expressed at the denial of an application for benefits reflects the degree of accuracy with which a claimant has described his impairments and symptoms. As Plaintiff correctly notes, every claimant applies for benefits with the knowledge and intent that a favorable determination will result in pecuniary gain. E.g., Ratto v. Secretary, 839 F. Supp. 1429, 1429 (D. Or. 1993). If the expectation of financial gain were a sufficient basis for discounting a claimant's credibility, "no claimant . . . would ever be found credible." Id.

Plaintiff's testimony concerning the termination of his employment does not provide a clear and convincing basis for discrediting his allegations. From the hearing testimony, the circumstances of the termination of Plaintiff's last employment are not entirely clear. However, Plaintiff's testimony that he could no longer perform the tasks required in his last work is supported by the medical record.

When an ALJ improperly rejects a claimant's testimony regarding his limitations, and the claimant would be disabled if the testimony were credited, courts do not remand solely to allow the ALJ to make further findings regarding the testimony. Lester, 81 F.3d at 834 (citing Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1401 (9th Cir. 1988)). Instead, the testimony is credited as a matter of law. Varney, 859 F.2d at 1401. Where, as here, there are no outstanding issues to be resolved before a determination of disability can be made, and it is clear

from the record that the ALJ would be required to find the claimant disabled if the evidence in question were credited, remand for an award of benefits is appropriate.  <u>Smolen</u>, 80 F.3d at 1292.


3. **<u>Lay Witness Evidence</u>**

Kim Lamoureux, Plaintiff's wife, completed a form describing Plaintiff's level of functioning.  She stated that Plaintiff helped care for the family's two dogs when he could, but that pain prevented him from doing most of the work involved in their care.  Ms. Lamoureux indicated that she helped Plaintiff put on his socks, washed his back, tied his shoes, and sometimes wiped his "backside because he can't reach."  She stated that she reminded Plaintiff to take his medications, that pain prevented Plaintiff from doing yard work, and that Plaintiff could not stand long enough to prepare meals.  She reported that Plaintiff's attention span was limited, and that he used a cane and a brace.

The ALJ asserted that he "strongly considered" Ms. Lamoureux's report.  However, his conclusion that her statements indicated that Plaintiff "can perform most of his activities of daily living and . . . only required occasional help from his wife," and that he "accommodated [plaintiff's limitations] by limiting the claimant to sedentary work" is not accurate.  Ms. Lamoureux described Plaintiff as extremely limited in his ability to carry out activities of daily living, and the ALJ's finding that Plaintiff could perform a full range of sedentary work is markedly inconsistent with her statements.


4. **<u>Assessment of Plaintiff's Past Work</u>**

At the fourth step of his disability analysis, the ALJ found that Plaintiff was able to perform his past relevant work as a material lister.  Plaintiff contends that the ALJ erred in

FINDINGS AND RECOMMENDATION – 19

characterizing his past work as sedentary, because he in fact worked as both a material lister and as a delivery person, which was a medium exertional level position. He contends that the ALJ erred in finding that he could perform his past work, based upon a finding that he could perform the least physically demanding part of his past work.

My conclusion that this action should be remanded for an award of benefits on other grounds makes it unnecessary to reach this issue, because crediting the opinion of Plaintiff's treating physician and crediting Plaintiff's own testimony requires a finding of disability. However, I briefly note my agreement with Plaintiff's argument. A claimant who cannot perform any previous job, but who can perform "only one or more tasks associated with" his previous jobs, cannot perform "past relevant work." <u>Valencia v. Heckler</u>, 751 F.2d 1082, 1087 (9th Cir. 1995). Here, the ALJ's RFC assessment would have permitted Plaintiff to perform only the least strenuous aspects of his past relevant work.

<u>**Conclusion**</u>

For the reasons set out above, a judgment should be entered REVERSING the decision of the Commissioner and REMANDING this action to the Agency for a finding of disability and an award of benefits.

<u>**Scheduling Order**</u>

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due March 1, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 13th day of February, 2012.


/s/ John Jelderks
John Jelderks
U.S. Magistrate Judge